# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ELL SHEHEE, | Case No. 1:14-cv-0005-LJO-DLB |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| PAMELA ANLIN, et al., | THIRTY-DAY DEADLINE |
| Defendants. | |

Plaintiff Gregory Ell Shehee, a civil detainee proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 2, 2014. The Court screened the complaint on May 20, 2014, and dismissed it with leave to amend.

Plaintiff filed his First Amended Complaint on June 11, 2014. He names numerous Defendants.

## I.   SCREENING STANDARD

The Court is required to screen Plaintiff's complaint and dismiss the case, in whole or in part, if the Court determines it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121-23 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.     ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH") in Coalinga, California.  His allegations are grouped into three distinct issues.

*Religious Diet*

Plaintiff complains that he was denied an opportunity to exercise his religion on December 24, 2012.  He states that Defendant Ahlin approved contracts for vegan religious diets.  Defendant Fenton brought the contract to Plaintiff for signature.  The contract was then taken to Defendant Dang for approval.  Defendant Mativo, Director of Diet Services, denied Plaintiff's religious diet.  When Defendant King became the acting Executive Director of the Department of State Hospitals ("DSH"), Plaintiff filed a complaint with her office.

Defendant Abrahamson, the dietician covering unit 2, retaliated against Plaintiff when he asked her to help him in securing his religious diet.  Defendant Abrahamson went to the unit 2 staff office and got a male staff member to talk to Plaintiff.  This staff member stood over Plaintiff, inappropriately close and in an "intimidating and aggressive manner," and used a "cold stare technique as if he was some kind of mafia enforcer from the movies."  ECF No. 11, at 10.

2

Defendant Abrahamson and this psych tech denied Plaintiff the opportunity to exercise his religion.

Plaintiff further alleges that on fourteen days in November and December 2012, Defendant Maylin, the chow hall server/supervisor, and Does 4-8, refused to serve Plaintiff his diet tray and instead tried to substitute religiously prohibited items. Defendants Maylin and Does 4-8 ignored Plaintiff's contract and compelled him to sign a Special Diet Meal Refusal Form, indicating that the offerings were in violation of his dietary contract. Also, on numerous occasions, Defendants Maylin and Does 4-8 offered Plaintiff nuts and apple products, to which he was noted to be allergic. Defendants Maylin and Does 4-8 refused to make the corrections and ignored Plaintiff's dietary contract.

Plaintiff attempted to communicate the issue to Defendant Sandoval, but she did not give him an opportunity to discuss the problem and refused to remedy the problem.

Plaintiff alleges that Defendant King's response dated October 13, 2010,[1] was the "final appeal response to [his] written complaints" about the religious diet issue. ECF No. 11, at 12.

*Medical Care- CSH*

Plaintiff alleges that on November 4, 2011, Defendants denied medical treatment for his right hand for over one year. Plaintiff states that he dislocated his thumb and wrist, but he was denied surgery to correct the injury and relieve the pain. Plaintiff saw Defendants Tur and Nguyen, but they only prescribed Tylenol.

After one year of suffering a scaphoid fracture, Plaintiff alleges that the surgery was provided, but he continues to suffer. Plaintiff believes that the one-year delay for surgery reduced the chances of a pain-free outcome.

After the surgery, surgeon Dr. Smith directed Defendant Nguyen to leave the cast on for three months and then return Plaintiff to him for evaluation and treatment. Defendant Nguyen did not send Plaintiff back to Dr. Smith. Four months after his surgery, Plaintiff's hand began to swell inside the cast, causing excruciating pain. Defendant Nguyen provided effective pain relief for two days, but then switched Plaintiff to Tylenol/Motrin, which was ineffective. Plaintiff remained

---

[1] It is unclear if this date is a typographical error.

3

in pain for two more months, until Defendant Nguyen had Plaintiff return to Dr. Smith for evaluation and treatment.

Plaintiff contends that Defendant King, the Executive Director of DSH during this time period, was made aware of his suffering through his written complaints, which were sent as appeals directly to her office. Defendant King did not take any action and ignored Plaintiff's suffering. Defendant King allowed Plaintiff to be transferred from DSH to the Los Angeles County Jail while in extreme pain.

Plaintiff further alleges that Defendants Sandhu, Nguyen and Tur ignored Plaintiff's injuries and allowed him to be transferred from DSH to the Los Angeles County Jail while in extreme pain.

*Medical Care- Los Angeles County Jail*

Plaintiff contends that while at the Los Angeles County Jail, Defendant Doe 1, the Chief Medical Officer, denied medical care. Plaintiff had been suffering from a scaphoid fracture for one year, and was forced to participate in his Sexually Violent Predator trial "in a severely exhausted and pain ridden condition." ECF No. 11, at 14.

*Access to Courts- CSH*

Plaintiff alleges that on September 20, 2011, he was transferred to unit 9 from unit 17. Prior to transfer, he had 36 bundles of legal papers. During the transfer, Defendants Perryman and Hill confiscated his legal papers and refused to transfer them to unit 9 in accordance with DSH policy. This prevented Plaintiff from preparing his case(s).

*Access to Courts- Los Angeles County Jail*

Plaintiff was later transported to the Los Angeles County Jail with six boxes of legal documents that were left over from the 36 bundles. Upon entering the Los Angeles County Jail, Sergeant Bisselhof was shown relevant case numbers and minute orders, and Plaintiff told him that he was pro se. Defendants Bisselhof and Does told Plaintiff that "none of that paperwork will be coming into L.A. County Jail," and "there is a truck in the back that we will throw it in." ECF No. 11, at 13. They told Plaintiff that he had ten minutes to give them a phone number so they \

4

could call someone to come get it, before they threw it into the trash. Plaintiff provided a phone number for Shoyne Riggins.

Plaintiff contends that Defendants Bisselhof and Does denied him the right to present evidence at his Sexually Violent Predator trial, after which he was committed to CSH. Plaintiff contends that had he been allowed to present evidence, the trial may have had a different result.

## III.     DISCUSSION

### A.     Unrelated Claims

As an initial matter, Plaintiff may not proceed in this action on a myriad of unrelated claims against different staff members at different institutions in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Here, Plaintiff's First Amended Complaint includes five distinct and unrelated claims: (1) denial of a religious diet at CSH; (2) denial of medical care at CSH; (3) denial of medical care at the Los Angeles County Jail; (4) denial of access to the courts at CSH; and (5) denial of access to the courts at the Los Angeles County Jail. With the exception of Defendant King, there is no cross-over in the defendants involved in each claim.

Plaintiff must determine which claim he wants to pursue in this action. He is cautioned that if his amended complaint fails to comply with Rule 18(a), the Court will choose which claims will proceed and will dismiss out all unrelated claims.

### B.     Supervisory Liability

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. *Crowley v. Bannister*,

5

734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Snow*, 681 F.3d at 989) (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff alleges that he submitted appeals to Defendant King's office, but she failed to take action. In some situations, a supervisor may be held liable for reviewing an appeal and failing to take action, *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006), but that situation has not been presented here. Plaintiff simply alleges that appeals were submitted to her office. This insufficient to demonstrate that Defendant King had knowledge of the alleged constitutional violations and failed to prevent them. While the appeals may have been submitted to her office, Plaintiff offers no allegations or exhibits suggesting that she actually reviewed the appeals.

Moreover, as discussed below, Plaintiff has not stated a viable claim against any Defendant. Absent the presentation of facts sufficient to show a constitutional violation in the first place, Plaintiff cannot pursue a claim against those who reviewed the administrative appeal grieving the underlying actions.

  C. First Amendment Claim

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof...." Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an

inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir.2008); *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir.1997).

"[C]ivil detainees retain greater liberty protections than individuals detained under criminal process.... *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir.2004) (citations omitted). "However, as with other First Amendment rights in the inmate context, detainees' rights may be limited or retracted if required to 'maintain [ ] institutional security and preserv[e] internal order and discipline.'" *Pierce*, 526 F.3d at 1209 (quoting *Bell v. Wolfish*, 441 U.S. 520, 549 (1979)).

As in his original complaint, Plaintiff's allegations are too vague to state a claim. In fact, Plaintiff does not even state what religion he practices. He only includes conclusory statements that he was denied an "opportunity to exercise" his religion, but the First Amendment does not secure an "opportunity to exercise" a chosen religion. Rather, the First Amendment prohibits officials from *substantially burdening* Plaintiff's religious practice. Plaintiff has not explained how the alleged failure to provide him with a religious diet on various occasions in November and December 2012, substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.

The Court also notes that Defendants Ahlin, Fenton and Dang are alleged to have *assisted* Plaintiff in securing his religious diet contract.

Plaintiff therefore fails to state a claim based on the denial of a religious diet.

D. <u>Medical Treatment</u>

As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. *Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir.2004). Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982).

A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." *Youngberg*, 457 U.S. at 321. Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of

7

confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. *Youngberg*, 457 U.S. at 321-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 322–23. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." *Ammons v. Washington Dep't of Soc. & Health Servs*., 648 F.3d 1020, 1029 (9th Cir.2011).

In his First Amended Complaint, Plaintiff first argues that while at CSH, Defendants Tur, Nguyen and Sandu ignored his pain, delayed surgery, and/or permitted him to be transferred without surgery. Plaintiff alleges that Defendants Nguyen and Tur provided treatment for his hand, but did not prescribe adequate pain medication. He also alleges that Defendant Nguyen failed to send him back to Dr. Smith for further treatment.

Plaintiff's allegations continue to be too vague to state a claim. Plaintiff includes *no* factual allegations against Defendant Sandu. He alleges that his surgery was delayed, but he does not state who was responsible for the delay. Plaintiff also contends that Defendants Tur and Nguyen provided only Tylenol, but he does not include facts to demonstrate that their treatment decisions were substantial departures from accepted professional judgment. Similarly, while Plaintiff complains that Defendant Nguyen failed to send him back to Dr. Smith, he does not include sufficient facts to demonstrate a constitutional violation.

As for Plaintiff's claim relating to his medical treatment at the Los Angeles County Jail, he contends that Defendant Doe 1, the Chief Medical Officer, denied medical care. He does not, however, further explain his claims.

For these reasons, Plaintiff fails to state a claim for denial of adequate medical care.

E. <u>Access to Courts</u>

While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. *Christopher v. Harbury*, 536 U.S.

8

403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *Phillips v. Hust,* 588 F.3d 652, 655 (9th Cir. 2009); *Jones*, 393 F.3d at 936.

The absence of an injury precludes an access claim, and Plaintiff's vague, conclusory allegations of injury are insufficient. While at CSH, Plaintiff contends that Defendants Perryman and Hill confiscated his legal papers, but he alleges only that it prevented him from preparing his case(s). Similarly, he alleges that while housed at the Los Angeles County Jail, Defendants Bisselhof and Does denied him access to his legal documents, resulting in his inability to present evidence at his Sexually Violent Predator trial. Plaintiff contends that had he been allowed to present evidence, the trial "may" have had a different result. This, too, is insufficient to demonstrate an actual injury. *Harbury*, 536 U.S. at 415-16; *Jones*, 393 F.3d at 936.

Therefore, Plaintiff fails to state a claim.

## IV. CONCLUSION AND ORDER

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983. In an abundance of caution, the Court will provide Plaintiff with **one final** opportunity to file an amended complaint. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's federal rights and liability may not be imposed on supervisory personnel under the theory of mere *respondeat superior*, *Iqbal*, 556 U.S. at 676-77; *Starr v. Baca*, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Plaintiff's amended complaint must also comply with Rules 18 and 20.

Finally, an amended complaint supercedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

///

///

9

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim under section 1983;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. <u>If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **December 25, 2014**              /s/ *Dennis L. Beck*
                                          UNITED STATES MAGISTRATE JUDGE