UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ELL SHEHEE, | Case No. 1:14-cv-0005 LJO DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| AHLIN, et al., | THIRTY-DAY OBJECTION DEADLINE |
| Defendants. | |

Plaintiff Gregory Ell Shehee, a civil detainee proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 2, 2014. Pursuant to Court order, he filed a Third Amended Complaint on December 3, 2015. He names numerous Defendants.

I.  **SCREENING STANDARD**

The Court is required to screen Plaintiff's complaint and dismiss the case, in whole or in part, if the Court determines it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681

1

(9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121-23 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiff is currently incarcerated at the Fresno County Jail. The events at issue occurred while he was a civil detainee at Coalinga State Hospital ("CSH") in Coalinga, California, and while he was incarcerated at the Los Angeles County Jail.

Plaintiff's allegations can be grouped into four distinct categories.

*Religious Diet*

Plaintiff alleges that while incarcerated at CSH, Defendant Ahlin denied his right to practice Hinduism.[1] Plaintiff states that he told Defendant Fenton that he had been practicing Hinduism since 1991, and that he was at high risk for cancer. Defendant Fenton gave Plaintiff a "medical order form contract" to sign, and Defendant Dr. Dang "wrote the religion medical vegan order." ECF No. 25, at 4. Plaintiff signed the contract.

Defendants Matino and Sandoval, however, started to order meat for Plaintiff's meals.

In 2013, Plaintiff filed a Patient's Rights Complaint with Defendant Matino, who denied it. Plaintiff sent the appeal to Defendant Sanduh, who also denied the complaint.

Plaintiff talked to Defendant Sandoval in the CSH dining room about his vegan diet, but she said, "the food you get is it." ECF No. 25, at 6.

---

[1] Plaintiff actually refers to the "Handue" religion, which the Court interprets as an incorrect spelling of "Hindu."

2

Plaintiff sent an appeal to Defendants Ahlin and King, but they denied it.

*Medical Care- CSH*

Plaintiff alleges that Defendants failed to treat a fracture in his right hand for over one year. On or about April 2012, Defendant Dr. Tur failed to treat the fracture and/or delayed treatment for one year. Defendant Tur looked at x-rays of Plaintiff's right hand, and knew or should have known that the fracture would result in further significant injury and pain.

Plaintiff filed a complaint against Defendant Tur for prescribing only Tylenol, which did not relieve the pain. He alleges that Defendant Tur's treatment decisions were a substantial departure from accepted professional judgment.

Plaintiff further alleges that Defendant Dr. Sanduh saw Plaintiff's Patient Rights Complaint and looked at his x-rays, but denied treatment. Plaintiff had to wait over one year for his surgery, from April 2012 through 2014, and was in significant pain.

Defendant Nguyen saw Plaintiff on or about November 20, 2013. He also saw Plaintiff's x-rays and his swollen hand. Defendant Nguyen gave Plaintiff Tylenol and Motrin, which did not treat the pain. Plaintiff believes that this was a substantial departure from accepted professional judgment.

Defendant Waggoner was Plaintiff's Patient's Right Advisor and failed to protect Plaintiff's right to treatment for his right hand. He contends that Defendant Waggoner falsified the appeal of Plaintiff's hand treatment and did not address the fracture.

Defendant King failed to grant Plaintiff's Patient Rights Complaint for treatment of his right hand, which resulted in significant pain and distress from April 2012 through February 9, 2015.

In or about December 2013,[2] Defendant Ahlin received Plaintiff's appeal but failed to grant it.

Finally, Plaintiff contends that on January 4, 2014, he was returned to the Department of State Hospitals. Defendant Ahlin, King, Sanduh, Nguyen, Tur denied his medical treatment for over one year by not having Plaintiff see a specialist. Plaintiff eventually saw Dr. Smith, who put a cast on Plaintiff's right hand and told him to return in three weeks. Plaintiff did not see Dr. Smith in

---

[2] Plaintiff lists the date as both December 2013 and December 2014.

three weeks and his hand swelled up while in the cast. Defendant Nguyen left the cast on, despite Plaintiff's pain.

*Medical Care- Los Angeles County Jail*

Plaintiff contends that while at the Los Angeles County Jail, Defendant Doe 1, the Chief Medical Officer, denied medical care. Plaintiff had been suffering from a scaphoid fracture for one year, and was forced to participate in his Sexually Violent Predator trial "in a severely exhausted and pain ridden condition." ECF No. 11, at 14.

Plaintiff also showed Defendant Bisselhof his swollen hand, but he denied medical treatment.

*Access to Courts- CSH and Los Angeles County Jail*

Plaintiff alleges that on December 15, 2013, Defendant King and state employee Doe 1 packed 385,000 legal documents and sent them to the Los Angeles County Jail. Defendant King knew that Plaintiff was in pain from his hand, but transferred him to Los Angeles County Jail for court.

Plaintiff alleges that Defendant Bisselhof, Sgt. at the Los Angeles County Jail, interfered with Plaintiff's active case by denying legal evidence to be used at trial. Plaintiff contends that this caused injury to his case, and that the evidence would have resulted in a different outcome.

When Plaintiff arrived at the Los Angeles County Jail on December 15, 2013, Defendant Bisselhof saw the 385,000 pages of legal documents to be used at Plaintiff's December 16, 2013, Sexually Violent Predator trial. Defendant Bisselhof told Plaintiff that he did not care about his evidence for trial, stating that "none of [his] legal documents [would] come in the jail." ECF No. 25, at 19-20. He told Plaintiff that they had a trash truck, or Plaintiff could give them the name of a person who could come and get it. Defendants Does 2 and 3 agreed.

**III.   DISCUSSION**

    A.   Unrelated Claims

As an initial matter, Plaintiff may not proceed in this action on a myriad of unrelated claims against different staff members at different institutions in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim

4

arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Here, Plaintiff's First Amended Complaint includes four distinct and unrelated claims: (1) denial of a religious diet at CSH; (2) denial of medical care at CSH; (3) denial of medical care at the Los Angeles County Jail; and (4) denial of access to the courts at the courts at the Los Angeles County Jail.  There is little cross-over in the Defendants involved in each claim.

In the prior screening order, the Court explained these requirements and told Plaintiff that he needed to determine which claim he wanted to pursue in this action.  The Court cautioned Plaintiff that if his amended complaint failed to comply with Rule 18(a), the Court would choose which claims will proceed and would dismiss out all unrelated claims.

Despite this warning, Plaintiff continues to set out distinct and unrelated issues.

B.   First Amendment Claim- Religion

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof...."  Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir.2008); *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir.1997).

"[C]ivil detainees retain greater liberty protections than individuals detained under criminal process.... *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir.2004) (citations omitted).  "However, as with other First Amendment rights in the inmate context, detainees' rights may be limited or retracted if

///

5

required to 'maintain [ ] institutional security and preserv[e] internal order and discipline.'" *Pierce*, 526 F.3d at 1209 (quoting *Bell v. Wolfish*, 441 U.S. 520, 549 (1979)).

In the prior screening orders, the Court explained as follows:

> Plaintiff's allegations are too vague to state a claim. In fact, Plaintiff does not even state what religion he practices. He only includes conclusory statements that he was denied an "opportunity to exercise" his religion, but the First Amendment does not secure an "opportunity to exercise" a chosen religion. Rather, the First Amendment prohibits officials from *substantially burdening* Plaintiff's religious practice. Plaintiff has not explained how the alleged failure to provide him with a religious diet on various occasions in November and December 2012, substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.

ECF No. 12, at 7.

Plaintiff's amendments do not cure this deficiency. While he now states that he has been practicing Hinduism since 1991, and that the Hindu "diet is no meat," he continues to argue that he was denied the right to "practice" his religion. ECF No. 25, at 5. As previously explained, the First Amendment does not guarantee a right to practice a certain religion. Rather, the First Amendment prohibits the substantial burdening of Plaintiff's religious practice, and Plaintiff provides no facts to support such an allegation.

Moreover, only conduct which Plaintiff sincerely believes is consistent with his faith is subject to First Amendment protection. Here, Plaintiff seems to allege that his vegan diet is both a religious issue *and* a medical issue, and he fails to explain why he sincerely believes that a vegan diet is consistent with his faith.

Finally, as the Court noted in the prior screening order, Defendants Fenton and Dang are alleged to have *assisted* Plaintiff in securing his religious diet contract.

Plaintiff therefore fails to state a claim against any Defendant under the First Amendment.

C.     Medical Treatment

As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. *Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir.2004). Plaintiff's right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982).

///

A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." *Youngberg*, 457 U.S. at 321. Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. *Youngberg*, 457 U.S. at 321-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 322-23. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." *Ammons v. Washington Dep't of Soc. & Health Servs*., 648 F.3d 1020, 1029 (9th Cir.2011).

In his Third Amended Complaint, Plaintiff alleges that while at CSH, Defendants Tur, Sanduh and Nguyen looked at his x-rays and failed to treat his fracture and/or delayed surgery. He contends that Defendants Tur and Nguyen provided Tylenol and/or Motrin, but these medications were inadequate to control pain. Plaintiff also alleges that Defendant Nguyen failed to remove his cast.

The Court previously explained that Plaintiff's allegations were too vague to state a claim. Although Plaintiff alleges a failure to treat, his allegations show that he was receiving treatment. His claim, therefore, is based on the alleged delays in receiving surgery and seeing a specialist, and his disagreement with the pain medication. Although Plaintiff now adds an allegation that the decisions of Defendants Tur and Nguyen were substantial departures from accepted professional judgment, his conclusory statement is insufficient to support a claim for relief. The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

///

///

Plaintiff also attempts to state a denial of medical treatment claim against Defendant Waggoner, his Patient's Rights Advisor.  Although his allegation is not entirely clear, Plaintiff suggests that he falsified an appeal.  Again, his allegations are too vague to state a claim.

As for Plaintiff's claim relating to his medical treatment at the Los Angeles County Jail, he contends that Defendant Doe 1, the Chief Medical Officer, and Defendant Bisslehof denied medical care.  In the prior screening order, the Court found that Plaintiff failed to sufficiently explain his claims.  His amendments do not cure this deficiency.

For these reasons, Plaintiff fails to state a claim for denial of adequate medical care.

D.     Access to Courts

While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *Phillips v. Hust,* 588 F.3d 652, 655 (9th Cir. 2009); *Jones*, 393 F.3d at 936.

The Court explained in the previous screening order that the absence of an injury precludes an access claim, and Plaintiff's vague, conclusory allegations of injury were insufficient.  Plaintiff has made little, if any, changes to his allegations.  He again contends that Defendants Bisselhof denied him access to his legal materials, which resulted the denial of evidence that he would have used at his Sexually Violent Predator trial.  He also alleges that Defendant Does 2 and 3 agreed with this decision.  Plaintiff contends that had he been allowed to present evidence, the trial "would" have had a different result.  ECF No. 25, at 18.  This remains insufficient to demonstrate an actual injury.  *Harbury*, 536 U.S. at 415-16; *Jones*, 393 F.3d at 936.

Therefore, Plaintiff fails to state a claim.

E.     Defendants Involved in Appeals Process

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation.  *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006), there may be

///

limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.  That circumstance has not been presented here.

Plaintiff's conclusory allegation that Defendants King, Ahlin, Matino and Sanduh denied his appeals is insufficient to support a plausible claim for relief.  *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1949-50; *Moss*, 572 F.3d at 969.  Moreover, as discussed above, Plaintiff has not stated a viable claim against any Defendant.  Absent the presentation of facts sufficient to show a constitutional violation in the first place, Plaintiff cannot pursue a claim against those who reviewed the administrative appeal grieving the underlying actions.

## IV.  FINDINGS AND RECOMMENDATIONS

Plaintiff's Third Amended Complaint fails to state any cognizable claims against any Defendant.  Plaintiff has had numerous opportunities to correct the deficiencies, but he has failed to do so.  The Court warned Plaintiff in the prior screening order that this would be his final opportunity to amend.  However, Plaintiff's Third Amended Complaint varies little from his prior complaints, and Plaintiff has disregarded the Court's warning against included unrelated claims in his amended complaint.  The Court therefore finds that further amendment is not warranted and that this action should be DISMISSED FOR FAILURE TO STATE A CLAIM.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:   **February 24, 2016**                   /s/ *Dennis L. Beck*
                                                 UNITED STATES MAGISTRATE JUDGE